IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| FIRSTSOURCE SOLUTIONS USA, INC., | : : : | Case No. 1:09-CV-165 |
| | : | Chief Judge Susan J. Dlott |
| Plaintiff, | : : | ORDER DENYING |
| v. | : : | DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| HARVEST INFO, INC., | : : | |
| Defendant. | : | |

This matter is before the Court on Defendant Harvest INFO, Inc.'s Motion for Summary Judgment (doc. 19), Plaintiff Firstsource Solutions USA, Inc.'s Memorandum in Opposition to the Motion for Summary Judgment (doc. 21), and Defendant's Reply in Support of Motion for Summary Judgment (doc. 24).  Plaintiff Firstsource Solutions USA, Inc. ("Firstsource USA") brought this action against Defendant Harvest INFO, Inc. ("Harvest"), alleging state law claims for breach of contract and unjust enrichment and a claim on an account.  (Complaint, doc. 1.) Defendant filed an Answer and asserted a counterclaim for breach of contract.  (Doc. 6.) Defendant moves for summary judgment as to all of Plaintiff's claims and Plaintiff opposes Defendant's motion.  For the reasons that follow, the Court **DENIES** Defendant's Motion for Summary Judgment.

I.   BACKGROUND

The memorandum supporting Harvest's Motion for Summary Judgment is only six pages in length and does not include a statement of facts.  Harvest did not file a Statement of Proposed

Undisputed Facts, as required by the Court's Standing Order Governing Civil Motions for Summary Judgment ("Standing Order").[1] Perhaps taking its lead from Harvest, Firstsource USA also did not include a statement of facts in its Memorandum in Opposition. Instead, Firstsource USA simply states that the relevant facts are included in various declarations attached as Exhibits A through D. Accordingly, this Court lacks the benefit of any cohesive statement of facts and does not include an extensive statement of facts herein.

For the purposes of this Order only, the Court gleans the following facts from the Plaintiff's Complaint and from the evidence submitted by Plaintiff and Defendant. Plaintiff Firstsource USA is a Delaware corporation with its principal place of business in New York. (Complaint ¶ 1.) Through a merger, Firstsource USA became the successor to another company, Sherpa Business Solutions, Inc. ("Sherpa"), effective February 1, 2009. (*Id*.; Frank Stellato[2] Decl. ¶ 2.) From 2005 to February 1, 2009, Sherpa had been a separate corporation that was a subsidiary of Firstsource Solutions Ltd. ("Firstsource India"). (Mark Hooper[3] Decl. ¶ 2.) Firstsource India, a supplier of digital advertising services, is the parent company of Firstsource USA. (*Id*.; Amjad Ansari[4] Decl. ¶ 2, 3.)

---

[1] The Standing Order is available at "Judge Susan J. Dlott – Forms and Procedures," http://www.ohsd.uscourts.gov/judges/fpdlott.htm.

[2] Frank Stellato is the President and Secretary of Firstsource USA. (Stellato Decl. ¶ 1.) His declaration is filed as Exhibit A to Defendant's Memorandum in Opposition. (Doc. 21-1.)

[3] Mark Hooper is the Head of Finance UK for Firstsource Solutions UK Limited ("Firstsource UK"), a sister company of Firstsource USA. (Hooper Decl. ¶ 1.) Hooper's declaration is filed as Exhibit C to Defendant's Memorandum in Opposition. (Doc. 21-10.)

[4] Amjad Ansari is the Business Development Manager for Firstsource UK. (Ansari Decl. ¶ 1.) Ansari's declaration is filed as Exhibit B to Defendant's Memorandum in Opposition. (Doc. 21-3.)

Prior to the 2009 merger of Sherpa and Firstsource USA, Firstsource India supplied its digital advertising services to Sherpa, who in turn provided those services to Defendant Harvest. Harvest is an Ohio corporation that provides customers with an "integrated suite of online technologies." (Complaint ¶ 2.) On or about July 3, 2003, Sherpa and Harvest entered into a Master Services Agreement (herinafter "Master Agreement") whereby Sherpa agreed to provide advertisements and other services to Harvest for payment. (Complaint Ex. 1; Scott Bailey[5] Aff. Ex. A-2.) On or about June 28, 2006, Sherpa and Harvest entered into a Statement of Work ("SOW") that amended and extended the Master Agreement. (Complaint Ex. 2; Bailey Aff. Ex. A-5.) On or about February 1, 2007, Sherpa and Harvest entered an Amendment II to Statement of Work ("Amendment") that amended the Master Agreement and the SOW. (Complaint Ex. 3.)

As early as March 2008, Sherpa began efforts to collect on its outstanding invoices for services provided to Harvest. (Hooper Decl. ¶ 5; Ansari Decl. ¶ 7.) By October 2008, Harvest owed Sherpa over $350,000. (Ansari Decl. ¶ 6.) At that time, Amjad Ansari, the Business Development Manager for Firstsource UK (Firstsource USA's sister company), was in charge of "managing the relationship with the Harvest account." (*Id*.) On November 26, 2008, Ansari sent an email to Harvest listing all of the unpaid invoices and requesting "assistance in getting them processed." (*Id.* ¶ 6, Ex. 2.) Thereafter, through February 2009, Ansari made repeated efforts to collect on those invoices. (*Id.* ¶ 8.) Harvest made one payment of $22,573.82 in late January 2009. (*Id.*; Bailey Aff. ¶ 6.) Harvest maintains that during 2008, it had been working on a payment plan with different contacts at Sherpa. (Bailey Aff. ¶ 5.) Sherpa does not specify the identity of those contacts. Nor is there any evidence that an agreement was reached.

---

[5] Scott Bailey is the Chairman of the Board for Harvest. (Bailey Aff. ¶ 1.)

3

Also in late January 2009, Ansari asked a representative of Harvest to review an Audit Confirmation to confirm the amount owed by Harvest to Sherpa for an external audit. (Ansari Decl. ¶ 9.) Harvest's Controller signed the Audit Confirmation after crossing out the amount of $438,174.27 that was originally listed on the audit and writing in a higher amount $440,529.96, which was then due and owing. (*Id.* Ex. 5.)

As indicated above, the merger of Sherpa and Firstsource USA became effective February 1, 2009. According to Plaintiff, Firstsource USA succeeded to all of Sherpa's rights and obligations under the Master Agreement, the subsequent SOW, and the Amendment pursuant to the merger. Following the merger, other individuals from Firstsource UK and Firstsource India became involved in trying to collect the outstanding amounts from Harvest. (Ansari Decl. ¶ 10; Hooper Decl. ¶ 6.) On February 2, 2009, Raman Venkat, Vice President of Operations,[6] sent an email to Bob Glass, the President and Chief Operating Officer at Harvest, asking him to make sure that the Audit Confirmation was executed and indicating that it "is important that Harvest clears all invoices up to and including November 2008 immediately and gets current with its payments to Firstsource." (Ansari Decl. ¶ 10, Ex. 6.) In response, Glass wrote that Harvest's customers were slow in paying, making it difficult for Harvest to pay to Sherpa. (*Id.*)

On or about February 16, 2009, Ansari and Hooper learned that Harvest was seeking alternate vendors. (Ansari Decl. ¶ 11; Hooper Decl. ¶ 7.) During negotiations, Hooper told Harvest that Sherpa/Firstsource USA was going to have to stop supplying Harvest with services if they could not agree on a payment plan. (Hooper Decl. ¶ 7.) Harvest characterizes the

---

[6] It is unclear whether Raman Venkat is the Vice President of Operations for Firstsource UK or for Firstsource India.

proposed payment plan as "impossible," and claims it was forced to go to another company for services previously provided by Sherpa. (Bailey Aff. ¶ 7.) Shortly thereafter, on March 9, 2009, Plaintiff Firstsource USA filed the instant lawsuit.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law." *Id*. at 252.

**III.     ANALYSIS**

Defendant Harvest moves for summary judgment as to all of Plaintiff Firstsource USA's claims based on two main arguments. First, Harvest contends Firstsource USA claims fail because Sherpa/Firstsource USA breached an anti-assignment clause in the Master Agreement by failing to obtain Harvest's consent prior to the merger of Sherpa and Firstsource USA. Second, Harvest argues that Firstsource USA failed to comply with a notice provision in the Master Agreement, which Harvest interprets as requiring that a defaulting party be given thirty days to cure any default. Firstsource USA opposes Harvest's motion on a number of grounds, including: (i) that as a matter of law, the merger of Firstsource USA and Sherpa is not governed by the anti-assignment clause, (ii) that Harvest received ample notice that Sherpa would not continue to render services without receiving payment on past services; and (iii) that Sherpa/Firstsource USA substantially performed the terms of the contract with Harvest, and therefore, any failure to provide contractually required notice does not constitute a breach.

Ordinarily, in reviewing the evidence set forth by both the moving and non-moving parties, the Court must carefully review "those portions of the submitted evidence designated by" both parties. *Guarino v. Brookfield Twp. Tr's.*, 980 F.2d 399, 410 (6th Cir. 1992). The Court's role is not to "sua sponte comb the record from the partisan perspective of an advocate for the non-moving [or moving] party." *Id.* Unfortunately, Defendant appears to expect the Court to do just that. In failing to include a statement of facts in its motion, Defendant missed its opportunity to point the Court to the precise facts that it believes to be relevant to this case or to identify the portions of the submitted evidence that support its motion.

Defendant's brief argument in support of its motion includes some citations to specific evidence. Defendant relies primarily on the affidavit of Scott Bailey, Chairman of the Board for Harvest. (Bailey Aff.) In fact, roughly one and one-half pages of Defendant's six-page brief is spent paraphrasing five paragraphs of Bailey's affidavit. Another approximately one-half of a page is dedicated to listing five exhibits that Bailey authenticates in his affidavit. Unfortunately, Defendant fails to demonstrate the relevance of those exhibits. More importantly, Defendant fails to show that the evidence it relies on reveals "no genuine issues of material fact are in dispute." *Matsushita Elec. Indus.*, 475 U.S. at 585-87. Instead, Defendant presents this Court with a stack of exhibits and apparently expects the Court to make Defendant's case. The Court declines to step into the role of advocate and leaves that role for counsel to fulfill at trial.

Defendant's first argument, that it is entitled to summary judgment because Sherpa/Firstsource USA failed to obtain Harvest's consent to assign Sherpa's rights under the Master Agreement to Firstsource USA fails as a matter of law. Under Ohio law, the effect of a merger is that one company absorbs another, "the latter retaining its own name and identity, and acquiring the assets, liabilities, franchises and powers of the former." *ASA Architects, Inc. v. Schlegel*, 75 Ohio St. 3d 666, 671, 665 N.E.2d 1083, 1087 (1996) (internal quotation marks omitted). Ohio Revised Code § 1701.82(A) provides in relevant part that when a merger becomes effective:

> (1) The separate existence of each constituent entity other than the surviving entity in a merger shall cease, except that whenever a conveyance, assignment, transfer, deed, or other instrument or act is necessary to vest property or rights in the surviving or new entity, the officers, general partners, or other authorized representatives of the respective constituent entities shall execute, acknowledge, and deliver those instruments and do those acts. For these purposes, the existence of the constituent entities and the authority of their respective officers, directors,

>general partners, or other authorized representatives is continued notwithstanding the merger or consolidation.
>
>. . .
>
>(3) The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority, of a public as well as of a private nature, of each constituent entity, and, subject to the limitations specified in section 2307.97 of the Revised Code, all obligations belonging to or due to each constituent entity, all of which are vested in the surviving or new entity without further act or deed. Title to any real estate or any interest in the real estate vested in any constituent entity shall not revert or in any way be impaired by reason of such merger or consolidation.

Firstsource USA argues that under Ohio law, a merger is distinguishable from an assignment and results in the transfer of all rights and liabilities of the first company to the surviving company by operation of law. To support its interpretation of Ohio law, Firstsource USA relies primarily on *Wonderly v. Pepsi-Cola General Bottlers of Ohio, Inc.*, No. L-97-1152, 1998 WL 114363 (Ohio Ct. App. Mar. 6, 1998). In that case, a group of independent distributors, the plaintiffs, entered into agreements with a certain Pepsi-Cola bottler. *Id.* at *1. The agreements contained a provision prohibiting assignments. *Id.* at *2. The agreements did not define the term "assignments" and "did not include any language relevant to or prohibiting mergers." *Id.* Later, the Pepsi-Cola bottler merged into another entity. *Id.* at 1. The plaintiff distributors sued the merged entities, claiming that their agreements were no longer valid due to the anti-assignment clause. *Id.* The appellate court held that the anti-assignment provision did not apply to the merger and that the agreements were, therefore, still valid. *Id.* In reaching that conclusion, the appellate court explicitly stated that "the effect of the merger was to transfer the agreements by operation of law, not by assignment." *Id.* Therefore, the anti-assignment clause was not breached.

The United States District Court for the Northern District of Ohio also found that an anti-assignment clause had no effect in the context of a merger in *Transcontinental Ins. Co. v. SimplexGrinnell LP*, No. 3:05CV7012, 2006 WL 2035571 (N.D. Ohio July 18, 2006). In that case, the plaintiff insurance company sought subrogation for monies it paid to its insured, Belmont Country Club, for damages sustained when a water pipe constituting part of a fire suppression system cracked. *Id.* at *1. The defendant, SimplexGrinnell LP, had contracted with Belmont to inspect and test the fire suppression system. *Id.* Belmont had originally entered into the contract at issue with another company that later merged into SimplexGrinnell. *Id.* The contract contained an assignment clause that prevented assignment of the contract to a third party without written consent of the other contracting party. *Id.* When the merger occurred, Belmont never consented to the assignment of the contract to SimplexGrinnell. *Id.* In 2001, SimplexGrinnell began inspecting the fire suppression system. The damage from the cracked water pipe occurred in 2003. *Id.*

One of the issues before the district court was whether the contract was enforceable. The plaintiff insurance company argued that when the merger occurred, the contract was assigned to the defendant without Belmont's approval and was therefore unenforceable. *Id.* at *2. The defendant argued, pursuant to Ohio Revised Code § 1701.82, that upon merger all obligations and rights are automatically conferred upon the new entity and no assignment is necessary. *Id.* at *3. Accepting the defendant's reading of Ohio law, the court held that because "the obligations owed to Belmont by [the original company] were transferred by operation of law, through merger, to SimplexGrinnell and not by assignment, the 1996 contract is valid and enforceable." *Id.* In holding as such, the court noted that the plaintiff "offered no case law demonstrating the

9

necessity of assignment for enforcement by new corporate entities of pre-merger corporation contractual obligations." *Id*.

Based on both *Wonderly* and *Transcontinental Ins. Co.*, the Court finds that the anti-assignment clause does not prevent Firstsource USA from enforcing the contract entered into by Harvest and Sherpa.  Harvest already had incurred the bulk of its debt to Sherpa prior to the merger.  Firstsource USA, as the remaining entity that emerged from the merger with Sherpa, acquired the rights previously held by Sherpa in the contracts with Harvest and in the unpaid account.

With regard to Defendant's second argument, that it was not given sufficient notice and opportunity to cure its default, the Court has reviewed the briefing in this matter along with the exhibits submitted by both Defendant and Plaintiff, and finds that genuine issues of material fact exist as the notice that Defendant received.  Accordingly, Defendant's Motion for Summary Judgment is denied.

**IV.    CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.


    s/Susan J. Dlott  
Chief Judge Susan J. Dlott  
United States District Court

10